IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MELISSA DAVIS,

      Plaintiff,

v.

CITY OF ATLANTA, *et al.*,

      Defendants.

CIVIL ACTION FILE NO.

1:16-cv-2037-TWT-JKL

## NON-FINAL REPORT AND RECOMMENDATION

      This matter is presently before the Court on Defendants' motion to dismiss [Doc. 20] and Plaintiff Melissa Davis's motion for leave to file a second amended complaint [Doc. 23].  For the following reasons, the Court **RECOMMENDS** that the motion for leave to amend be **DENIED** [Doc. 23] and the motion to dismiss be **GRANTED IN PART** and **DENIED IN PART** [Doc. 20].

### I.     Procedural history

      On June 17, 2016, Davis filed a complaint raising claims related to her employment with the City of Atlanta (the "City of Atlanta" or the "City"), naming the City, Richard Mendoza, and Yvonne Yancy as Defendants.  [Doc. 1.]

Defendants moved to dismiss the complaint for failure to state a claim.  [Doc. 12.] Davis responded to the motion to dismiss and, at the same time, moved for leave to amend the complaint.  [Docs. 14, 15.]  The Court granted the motion for leave to amend and denied Defendants' motion to dismiss as moot.  [Doc. 16.]  Davis's amended complaint was docketed as the operative complaint.  [Doc. 17 ("Am. Compl.").]

On October 25, 2016, Defendants filed a motion to dismiss the amended complaint for failure to state a claim.  [Doc. 20.]  Davis responded to the motion to dismiss and, again, at the same time, moved for leave to amend the complaint. [Docs. 22, 23.]  Defendants responded to the motion for leave to amend, arguing that they oppose the amendment because the proposed second amended complaint is substantially the same as the amended complaint, and any minor defects in the amended complaint can be resolved by ruling on their pending motion to dismiss. [Doc. 28.]  Defendants also replied to Davis's response to their motion to dismiss. [Doc. 29.]

## II.   The Amended Complaint

In the amended complaint, Davis alleges that she is a nine-year employee with the City of Atlanta and that she has nearly twenty years of experience in

2

budget and financial management.  (Am. Compl. ¶ 20.)  Presently, she is working as a senior financial manager with supervisory responsibilities in the City's Department of Public Works.  (*Id.*)  Defendant Mendoza is the Commissioner of the Department of Public Works.  (*Id.* ¶ 7.)  Defendant Yancy is the City's Commissioner of the Department of Human Resources.  (*Id.* ¶ 10.)

Davis asserts that the City uses salary schedules referred to as "Pay Grades." (Am. Compl. ¶ 17.)  Davis's Pay Grade is 24.  (*Id.*)  The City does not use standards or objective criteria to determine an employee's Pay Grade, Davis alleges, and as a matter of practice, the City "manipulates" Pay Grades so that employees within a particular Pay Grade are not compensated equally.  (*Id.* ¶ 18.) Davis asserts that the City, Mendoza, and Yancy manipulated her compensation to provide her with less pay than male employees doing equal work.  (*Id.* ¶ 19.) Davis was paid less than male employees doing similar jobs requiring equal skill and effort at Pay Grades 21 and 24.  (*Id.* ¶ 21.)

On January 29, 2015, Davis discovered that the City was paying her male coworkers Elvin Gibbs and Norman Lopez, Jr. a higher wage for jobs that required substantially the same skill, effort, and responsibility.  (Am. Compl. ¶ 22.)  She wrote to Mendoza and City human resources officials, requesting that

3

her pay be brought in line with Gibbs's pay.  (*Id.* ¶ 23.)  On February 9, 2015, a City Human resource manager responded as follows:

> I have received and reviewed your email in regards to your salary versus that of [Gibbs] and [Lopez].  Although the essential duties and responsibilities of your position and that of [Lopez] may appear to be identical, when conducting a pay parity the actual job titles are compared and not the job responsibilities.

(Am. Compl., Ex. B.[1])

Davis continued to request that her pay be brought in line with that of her male co-workers.  (Am. Compl. ¶ 25.)  Defendants Mendoza and Yancy failed to respond to Davis's requests, and Davis alleges that, in declining to redress her grievances, they made the decision that she continued to be compensated at a lower rate than male employees.  (*Id.* ¶ 26.)  Davis's supervisors told her that they were aware of the matter and that it was in the process of being resolved, but her pay was not increased.  (*Id.* ¶¶ 25-28.)

Davis alleges that City Ordinances require employees to receive equal pay for equal work and to receive back pay for work they perform out of their "class."

---

[1] Although Davis does not allege that she complained to the City about her pay versus that of Lopez at that time, the City's February 9, 2015 response letter suggests that Plaintiff may have in fact done so.  (*See* Am. Compl. ¶¶ 22-24, Ex. B.)

(Am. Compl. ¶ 27.)  Notwithstanding those ordinances, she asserts, Defendants discriminated against with respect to pay, salary, and benefits.  (*Id.* ¶¶ 26, 29-30.)

In Count 1, Davis alleges that Defendants discriminated against her on the basis of sex with respect to compensation and by not giving her higher paying positions, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII").  (Am. Compl. ¶¶ 31-55.)  In Counts 2 through 4, she alleges that the Defendants violated her equal protection and due process rights and that the City of Atlanta violated the Equal Pay Act.  (*Id.* ¶¶ 56-65.)  In Count 5, Davis asserts a breach of contract claim against the City for failure to comply with City ordinances and personnel standard operating procedures ("SOPs") requiring equal pay for equal work.  (*Id.* ¶¶ 66-72.)  Davis also has attached to her complaint a copy of the charge of discrimination that she filed with the Equal Employment Opportunity Commission ("EEOC").  (*Id.*, Ex. A.)

### III.   The Motion for Leave to Amend

As an initial matter, the Court must determine whether to address the motion for leave to amend or the motion to dismiss first.  Davis argues that she should be granted leave to amend because the deficiencies in the amended complaint are typographical errors that may be corrected by amendment.  [Doc.

23 at 4.]  Defendants argue that the Court should resolve the substantive issues in their motion to dismiss because the Court can address the minor issues corrected in the proposed amendment by ruling on the motion to dismiss.  [Doc. 28 at 2-4.]

Federal Rule of Civil Procedure 15(a) provides that leave to amend "should be freely given."  Fed. R. Civ. P. 15(a)(2).  A court may deny leave to amend, however, when the amendment would be futile.  *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004).  An amendment is futile if the complaint as amended is still subject to dismissal.  *Id.* at 1263.  Thus, "leave to amend may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim."  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008).

Applying these standards, the Court concludes further amendment of the complaint is unnecessary as the proposed second amended complaint does not add any new claims for relief, nor does it amend the substantive claims that are the subject of the pending motion to dismiss.  Rather, the proposed amendment only deletes an erroneous reference to 42 U.S.C. § 1981 in the introduction section and clarifies that the Title VII claim is asserted solely against the City.  [Doc. 23 at 4.]  The Court can efficiently address those issues by simply ruling on

6

the pending motion to dismiss.  Otherwise, if the Court were to grant leave to amend, Defendants would undoubtedly file a third motion to dismiss, further prolonging the pleading stage of this case.  Keeping in mind Federal Rule of Civil Procedure 1's admonition that the rules should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding," the Court concludes that the most appropriate course of action would be to deny the motion for leave to amend. Accordingly, it is **RECOMMENDED** that the District Court **DENY** the motion for leave to amend and resolve the substantive issues raised in the motion to dismiss.

## IV.    The Motion to Dismiss

In evaluating a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not provide "detailed factual allegations," but it must provide factual allegations sufficient to set forth the plaintiff's entitlement to relief. *Twombly*, 550 U.S. at 555.    Providing only "labels and conclusions" is

7

insufficient, "and a formulaic recitation of the elements of a cause of action will not do." *Id.*

### A. The complaint does not contain a § 1981 claim or a substantive claim under the Lilly Ledbetter Fair Pay Act.

Defendants argue that Davis's § 1981 claim fails as a matter of law because § 1981 prohibits intentional discrimination on the basis of race, not gender. [Doc. 20 at 17-18.] Furthermore, Defendants argue, Davis cannot assert an independent cause of action under the Lilly Ledbetter Fair Pact Act ("LLFPA") because that statute concerns the statute of limitations for filing an equal pay lawsuit. [*Id.*]

As the Court reads the complaint, however, the complaint does not raise a § 1981 claim or a substantive claim under the LLFPA. Davis made only a passing reference to § 1981 in the introduction of her complaint, (Am. Compl. ¶ 1), which she concedes was erroneous, [Doc. 23 at 4]. Davis also indicated that she was bringing a sex discrimination claim under Title VII as amended by, *inter alia*, the LLFPA, not that she was bringing a substantive claim under the LLFPA itself. (Am. Compl. ¶ 1.) Since it is clear that Plaintiff is not asserting § 1981 and LLFPA claims, the Court recommends that the portion of Defendants' motion to dismiss seeking the dismissal of those claims be denied as moot.

### B. In Count 1, Davis exhausted her Title VII compensation claim against the City, but her remaining Title VII claims should be dismissed.

In Count 1, Davis chiefly asserts that Defendants discriminated against her on the basis of sex, in violation of Title VII, by paying her less than "male employees for the same, or substantially the same, positions that require doing equal work." (Am. Compl. ¶¶ 32, 36, 40.) She alleges that she was paid less than male employees with less seniority and fewer qualifications. (*Id.* ¶ 37.) Moreover, she claims, Defendants' compensation procedures were discriminatory because they used subjective, rather than objective, criteria in making compensation decisions. (*Id.* ¶¶ 41, 43.) This practice allowed and encouraged decisionmakers to make those decisions based on sex-based stereotypes and bias, and decisionmakers refused to compensate women, including Davis, at the same rate as men. (*Id.* ¶¶ 43, 46.) According to Davis, this practice was implemented with the intent to pay her and other women less than male employees. (*Id.* ¶ 45.) Davis asserts that she was subjected to a "pattern and practice" of intentional discrimination, including a policy of restricting women to lower compensation levels and job classifications. (*Id.* ¶ 42.)

Davis generally alleges that she was denied promotions and favorable job assignments and discriminated against in other working conditions on the basis of sex.  (Am. Compl. ¶¶ 33, 42-43, 46.)  Davis also alleges that Defendants' selection and pay procedures had "a disparate impact" on female employees.  (*Id.* ¶¶ 34, 42.)  She asserts that Defendants could have used objective compensation criteria to avoid a discriminatory impact on women but refused to do so.  (*Id.* ¶ 44.)

Defendants argue, first, that Davis cannot sustain a Title VII claim with respect to her individual supervisors and, thus, the claims against the individual Defendants should be dismissed.  [Doc. 20 at 4-5.]  They further argue that Davis's Title VII claim should be dismissed for failure to exhaust administrative remedies.  [*Id.* at 5-9.]  Specifically, Defendants argue that Davis failed to exhaust her Title VII compensation discrimination claim because she did not check the box for sex-based discrimination on the charge of discrimination filed with the EEOC.  [*Id.* at 6.]  They argue that any Title VII claim based on the failure to promote, discrimination in job assignments, and other employment practices is unexhausted because the EEOC charge contained no suggestion that such conduct occurred.  [*Id.* at 6-8.]  Defendants also argue that Davis's disparate impact claim

10

is unexhausted and that she cannot bring a pattern-or-practice claim because such claims may be brought only by the government or in a class action.  [*Id.* at 8-9.]

### 1. Title VII legal standards

Title VII provides that it is unlawful for an employer to discriminate against an employee on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Discrimination includes, *inter alia*, failing to hire an individual or discriminating against an employee with respect to compensation. *Id.*  To withstand a Rule 12(b)(6) motion to dismiss, a Title VII discrimination claim need only contain enough factual matter to "plausibly suggest" that the plaintiff suffered an adverse employment action due to intentional discrimination. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015).

Courts have recognized that employers can use job titles and job classifications to discriminate in compensation between male and female employees.  *See, e.g.*, *Beck-Wilson v. Principi*, 441 F.3d 353 (6th Cir. 2006) (summary judgment precluded on Title VII wage discrimination claim where male employees, classified as physician assistants, were paid more than female employees, classified as nurse practitioners, even though jobs were

11

"interchangeabl[e]" at the medical facility).  Such "job classification" claims are actionable as Title VII compensation claims.  *See id.* at 369-70.

Before filing a Title VII discrimination claim, a plaintiff must first file a charge of discrimination with the EEOC.  *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004).   "The purpose of the exhaustion requirement is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts."   *Id.* (alteration in original) (quotation omitted).  A plaintiff may raise claims in federal court that "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint but may not allege new acts of discrimination that were not in the EEOC charge.  *Id.* at 1279-80 (quotation omitted).  The proper inquiry is whether the plaintiff's complaint "was like or related to, or grew out of, the allegations contained in [the] EEOC charge" such that a "reasonable EEOC investigator" could have investigated the claim.  *Id.* at 1280; *see also Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989); *McCurdy v. Auburn Univ.*, No. 3:14cv226-MHT, 2015 WL 2064248, at *2-3 (M.D. Ala. May 4, 2015).

### 2. Davis cannot assert a Title VII claim against the individual Defendants.

To the extent that the amended complaint asserts any Title VII claims against Defendants Yancy and Mendoza, those claims should be dismissed.  Title VII claims may be asserted against the employer or its supervisory employees named as agents, not against a supervisor named in his individual capacity. *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) ("Individual capacity suits under Title VII are . . . inappropriate.  The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act."); *see also Hinson v. Clinch Cty., Ga. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000).  Davis also acknowledges in her motion for leave to amend that she intended to sue only the City in Count 1.  [Doc. 23 at 4.]  Accordingly, the Title VII claims against Yancy and Mendoza should be dismissed with prejudice.

### 3. Davis has exhausted her Title VII disparate treatment claim with respect to compensation.

On February 18, 2015, Davis filed a charge of discrimination with the EEOC.  (Am. Compl., Ex. A.)  On the charge form, she checked the box marked

"other" and specified that she was proceeding under the Equal Pay Act.  The narrative portion of Davis's EEOC charge states as follows:

I.     I began working for the [City] on or about February 14, 2006, as a Performance Auditor.  My most recent title is Financial Manager, Senior.  On or about January 29, 2015, I notified Rita Braswell, Program Management Officer, that I was being paid a lower salary than similarly situated male employees.

II.    On February 9, 2015, Blake Carlton, Human Resources Manager II, stated that pay is compared to job titles and not the job responsibilities.

III.   I believe I am being discriminated against because of my sex (female), in violation of the Equal Pay Act of 1963, as amended.

(*Id.*)

Here, the Court readily concludes that Davis's Title VII claim with respect to compensation is exhausted.  *See Gregory*, 355 F.3d at 1279-80.  Davis's EEOC charge would put the EEOC's investigator on notice to investigate whether the City discriminated against Davis on the basis of sex in terms of compensation, either by simply paying her less or by giving her a lesser job classification or title than similarly situated male employees.  A reasonable EEOC investigator likely would compare Davis's salary, Pay Grade, job duties, and job classification to those of her male coworkers.  *See id.* at 1280.  Moreover, courts do not penalize plaintiffs for minor technical defects in their EEOC charges like failure to check

14

the correct box on the form. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970) (holding that a plaintiff's failure to check the right box on an EEOC form did not bar his claim because that constituted only a failure to reach the proper "legal conclusion emanating from his factual allegations").[2] Davis's Title VII claim of discrimination on the basis of sex with respect to compensation and job classification is like or related to the facts alleged in the EEOC charge and is therefore exhausted. *See Gregory*, 355 F.3d at 1280.

> **4. To the extent that Davis seeks to raise a true failure-to-promote claim or a disparate treatment claim about discriminatory job assignments and other conditions of employment, those claims are unexhausted.**

To the extent that Davis raises a true failure-to-promote claim, rather than challenging her compensation through job classification or job title, that claim is not exhausted. There is no suggestion in the EEOC charge that Davis applied for and was denied a promotion. (*See* Am. Compl., Ex. A.) Nor is there any suggestion in the charge of discrimination that the EEOC should investigate her qualifications for a promotion. (*See id.*)

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

The same is true for discrimination based on job assignments and other working conditions, as there is no suggestion in the EEOC charge that Davis received less advantageous or desirable job assignments or was subject to other discriminatory working conditions.  (*See* Am. Compl., Ex. A.)  In fact, Davis told the EEOC that she was receiving less pay for doing the same work as her male colleagues, which strongly suggests that they received the same types of job assignments and worked in similar conditions.  (*See id.*)

Thus, to the extent that Davis asserts claims of disparate treatment based on failure to promote or working conditions, those claims are unexhausted because they are not like or related to Davis's claims about her compensation.  *See Gregory*, 355 F.3d at 1280.  Furthermore, the amended complaint contains no factual allegations suggesting that Davis applied for and was denied a promotion or was given less desirable job assignments, so a disparate treatment claim based on a failure to promote or discriminatory job assignments would fail as a matter of law in that regard as well.  *See Surtain*, 789 F.3d at 1246.  Accordingly, Davis's Title VII failure-to-promote and working conditions claims should be dismissed without prejudice.

16

5. **Davis has abandoned any argument that her disparate impact claim is exhausted, and she cannot, as an individual plaintiff, bring a pattern-or-practice claim.**

In her response to the motion to dismiss, Davis does not address Defendants' argument that her disparate impact claim is unexhausted. [Doc. 22 at 3-4.]  On that basis, the Court may deem Davis's disparate impact claim abandoned. *See White v. Ga. Dep't of Motor Vehicle Safety*, No. 1:06-CV-0124-TWT, 2006 WL 1466254, at *1 (N.D. Ga. May 19, 2006) ("[I]t is well-accepted in this district that the failure to respond to arguments relating to a claim constitutes abandonment of the claim.").

In any event, Davis's disparate impact claim is unexhausted because, in her EEOC charge, she did not identify an employment practice that she claimed had a disparate impact on female employees.   Disparate impact claims concern "practices that are not intended to discriminate but in fact have a disproportionately adverse affect on [protected groups]." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).  Such practices are usually "facially neutral," and no proof of discriminatory intent is required. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003); *E.E.O.C. v. Catastrophe Mgmt. Sols.*, __ F.3d __, No. 14-13482, 2016 WL 7210059, at *4 (11th Cir. Dec. 13, 2016); *E.E.O.C. v. Joe's Stone Crab, Inc.*,

17

220 F.3d 1263, 1268 (11th Cir. 2000).  An EEOC charge that fails to mention disparate impact or identify a facially neutral employment practice that results in a disparate impact does not alert the EEOC to investigate a disparate impact claim about such a practice.  *Butler v. Matsushita Communc'n Indus. Corp. of U.S.*, 203 F.R.D. 575, 582 (N.D. Ga. 2001) ("It is not reasonable to expect the EEOC to investigate any neutral employment policy when all that is raised is intentional discrimination.").

Here, Davis stated in her EEOC charge that she believed she was being discriminated against "because of [her] sex (female)."  (Am. Compl., Ex. A.) Such a claim would prompt an EEOC investigator to investigate a claim of intentional sex discrimination.  The EEOC charge does not mention a subjective compensation system, which Davis's amended complaint identifies as the employment practice that has had a disparate impact on female employees.  (*Id.* ¶ 44.)  Thus, Davis's disparate impact claim is unexhausted.

With respect to Davis's putative pattern or practice claim, the claim fails because, as a private individual, Davis can only bring such a claim as a class action under Fed. R. Civ. P. 23.  *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 968 n.29 (11th Cir. 2008); *see also McKitt v. Ala. Beverage*

18

*Control Bd.*, 571 F. App'x 867, 875 n.10 (11th Cir. 2014).  In any event, her use of the term "pattern or practice" in the amended complaint appears to refer to City practices that she believes are discriminatory, rather than asserting a true pattern or practice claim.  (Am. Compl. ¶ 42.)

Accordingly, Davis's Title VII disparate impact claim should be dismissed without prejudice and her Title VII pattern-or-practice claim should be dismissed with prejudice.

### 6.  Summary

In sum, as to Count 1, Davis has exhausted her Title VII disparate treatment claim of sex discrimination with respect to compensation, and that claim should be allowed to proceed.  To the extent that she seeks to raise a disparate treatment claim about failure to promote, discriminatory job assignment, or other discriminatory working conditions, or a disparate impact claim, those claims are unexhausted and should be dismissed without prejudice.  To the extent that Davis seeks to raise a pattern or practice claim, that claim fails as a matter of law because she may not do so as an individual plaintiff.

### C. In Counts 2-4, Davis has stated an equal protection claim against all Defendants and an Equal Pay Act claim against the City, but she has failed to state a due process claim.

In Counts 2 through 4, Davis alleges that the Defendants denied her rights to due process and equal protection, and that the City of Atlanta denied her rights under the Equal Pay Act, by paying her less than male employees.  (Am. Compl. ¶¶ 56-65.)  Davis does not specifically identify in her complaint which numbered count corresponds to which cause of action.  For purposes of the motion to dismiss, the Court will treat Count 2 as Davis's § 1983 equal protection claim against all Defendants, Count 3 as Davis's § 1983 due process claim against all Defendants, and Count 4 as Davis's Equal Pay Act claim against the City.

## 1. The individual Defendants are not entitled to qualified immunity on Davis's § 1983 equal protection claim.

In Count 2, Davis alleges that the Defendants deprived her of equal protection by paying her less than male employees performing the same duties. (Am. Compl. ¶ 57.)  The individual Defendants argue that they are entitled to qualified immunity on Davis's § 1983 equal protection claim because Davis failed to allege that she has the same amount of experience and time on the job as her male comparators.  [Doc. 20 at 14-15.]  Defendants chiefly rely on *Bates v. Hunt*, 3 F.3d 374, 379 (11th Cir. 1993), in which the Eleventh Circuit concluded that, at summary judgment, the governor of Alabama was entitled to qualified immunity on a plaintiff's equal protection claim that she was not paid as much as

a male coworker with the same job duties and title because the undisputed evidence showed that the male coworker had ten years more experience than the plaintiff.  [*See id.*]

"Qualified immunity offers complete protection to government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."  *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (quotation omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Although qualified immunity is typically addressed at summary judgment, an official may assert the defense of qualified immunity in a motion to dismiss. *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001).  A motion to dismiss based on qualified immunity will be granted if the complaint fails to allege the violation of a clearly established constitutional right.  *Id.*

It is clearly established that employees have a constitutional right under the Equal Protection Clause to be free from unlawful sex discrimination in public employment.  *Cross v. State of Ala. Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1508 (11th Cir. 1995); *Nicholson v. Ga. Dep't of Human Res. (DHR)*, 918 F.2d 145, 148 (11th Cir. 1990).  To show a violation of

21

the Equal Protection Clause, a plaintiff must show discriminatory motive or purpose.  *Cross*, 49 F.3d at 1507.  Here, Davis has stated a claim for a violation of a clearly established right based on her allegations that the individual Defendants decided or knowingly failed to correct and ratified the decision to pay her less than male coworkers based on her sex.  (Am. Compl. ¶¶ 17-30, 48, 57-58, 61-62.) Davis alleges that the individual Defendants "were expressly aware" that she was paid less than her male colleagues "based on letters and memos from Plaintiff, Plaintiff's Union Representative, supervisors, and/or department heads."  (*Id.* ¶ 58.)

At the pleading stage, Davis is not required to anticipate every factual defense that the Defendants might assert, including the defense that one or more of Davis's comparators might have more experience than her.  *See Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002) ("Where it is not evident from the allegations of the complaint alone that the defendants are entitled to qualified immunity, the case will proceed to the summary judgment stage, the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation."); *see also Iqbal*, 556 U.S. at 680-83 (considering whether plaintiffs' allegations, if proven, established a

22

*Bivens*[3] claim of purposeful, invidious discrimination in violation of the First and Fifth Amendments for purposes of determining whether defendants were entitled to qualified immunity).  It is enough that Davis has alleged sufficient facts that, if proven, would constitute the violation of a clearly established right to be free from unlawful sex discrimination.  *See Chesser*, 248 F.3d at 1121.

### 2. Davis has stated a § 1983 equal protection claim against the City under a municipal liability theory.

The City argues that Davis has not stated a claim for municipal liability under § 1983 regarding her equal protection claim.  [Doc. 20 at 16-17.]  The City argues that the amended complaint includes only a conclusory allegation that the City failed to train employees about discrimination and responding to reported discrimination, and thus, Davis failed to establish a factual predicate for her municipal liability claim.  [*Id.*]

In the amended complaint, Davis alleges that she was paid less than male coworkers pursuant to City of Atlanta's ordinances, rules, regulations, and customs.  (Am. Compl. ¶ 60.)  Specifically, the City used only subjective criteria to determine how employees would be assigned to a Pay Grade or paid within a Pay Grade, which allowed and encouraged supervisors to engage in

---

[3] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

discriminatory practices.  (*Id.* ¶¶ 18, 43.)  She also alleges that the City engaged in a practice of "manipulating" Pay Grades to provide male employees with more pay than female employees.  (*Id.* ¶ 19.)  Davis asserts that Defendants Yancy and Mendoza, as the Commissioners of Human Resources and Public Works, respectively, were the final policymakers for the City with respect to the question of her pay, and they made the decision to pay her less than her male colleagues by not redressing her grievances about her pay.  (*Id.* ¶¶ 7, 10, 57, 59, 61-62.)  She further asserts that the Defendants failed to train employees on how to respond to complaints of discrimination.  (*Id.* ¶ 58.)

In § 1983 cases, a municipality may not be held liable on a theory of supervisory liability, but it may be held responsible for "execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy."  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).  Municipal liability may be imposed for actions taken by municipal policymakers with final authority to establish municipal policy with respect to those actions.  *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997) (citing *Monell*, 436 U.S. at 694, and *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)).  A subordinate official's

24

decisions may be the basis for imposing municipal liability if authority is delegated to the subordinate official and her discretionary decisions are not constrained by official policies or subject to review. *Id.* at 1399-1400.

In light of the applicable law, the Court does not agree that the failure-to-train allegation is the only allegation in the amended complaint that bears on the issue of municipal liability. Moreover, Davis alleges that Yancy and Mendoza, as the Commissioners of Human Resources and Public Works, ratified the decision to pay her less than her male colleagues and were the final decisionmakers responsible for setting City policy with respect to the issue. Thus, the complaint contains sufficient factual matter that, if proven, would support a claim of municipal liability. *See Scala*, 116 F.3d at 1399.

### 3. Davis's § 1983 due process claim fails as a matter of law, and the individual Defendants are entitled to qualified immunity.

As to Count 3, Davis alleges that Defendants deprived her of her due process rights by paying her less than her male colleagues and by not allowing her to appeal "compensation decisions" or arbitrate the matter. (Am. Compl. ¶¶ 57, 59.)

The Due Process Clause of the Fourteenth Amendment protects against the government's deprivation of property without procedural due process. U.S. Const.

25

amend. XIV, § 1.  The elements of a due process claim under § 1983 are: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process.  *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire . . . [or] unilateral expectation of it."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972).  Property interests are usually defined with respect to state law.  *Cochran v. City of Atlanta*, 150 F. Supp. 3d 1305, 1325 (N.D. Ga. 2015).  Under Georgia law, a public employee has no property interest in a desired promotion or pay raise.  *Johnson v. Fulton Cty.*, 235 Ga. App. 277, 279 (1998) (pay raise); *Cohilas v. Clayton Cty. Bd. of Comm'rs*, 206 Ga. App. 134 (1992) (promotion).  As to the third element, the process that an employee is due is defined with respect to federal constitutional standards— not the standards of a public employer's personnel rules or state law.  *Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992).

Davis cites no authority for the proposition that she has a property interest, for purposes of a due process claim, in having her pay increased to match that of a

26

male coworker.[4]   It is clear that, under Georgia law, Davis does not have a property interest in an expected or hoped-for pay raise or job promotion.   It follows, therefore, that she has no property interest in being paid as well as male employees.  *See Grayden*, 345 F.3d at 1232.  Thus, her due process claim fails as a matter of law.

But even if she had a property interest in an increase in compensation, she has not shown a clearly established right to have the City follow its own grievance procedures before denying the increase.  Davis is due only the process that is constitutionally required, not the process that might be required by City grievance procedures.  *See Bailey*, 956 F.2d at 1122.  It is therefore clear that Davis has failed to state a claim any Defendant violated her due process rights by not giving her the same compensation as her male colleagues and by not following the City's grievance procedures.   Accordingly, the individual Defendants should be granted qualified immunity and the claim dismissed as to all Defendants.

---

[4] The only case that Davis cites that purports to address due process rights within this context is *Morris v. Wallace Community College-Selma*, 125 F. Supp. 2d 1315, 1338 (S.D. Ala. 2001).  That case is inapposite because the plaintiff did not allege a due process violation or that she had a property interest in regard to her rate of pay.

### 4. Davis has stated an Equal Pay Act claim against the City.

In Count 4, Davis alleges that the City of Atlanta denied her rights under the Equal Pay Act by paying her less than male employees performing the same duties as her.  (Am. Compl. ¶ 57.)  The City argues that Davis has failed to allege the elements of an Equal Pay Act claim because she has not shown that she performed duties identical to that of Gibbs or Lopez, identified their job titles, or provided details about their working conditions.  [Doc. 20 at 10-11.]

The Equal Pay Act prohibits gender-based discrimination in rates of pay to employees.  29 U.S.C. § 206(d); *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992).  Specifically, the Equal Pay Act provides:

> No employer . . . shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . ."

29 U.S.C. § 206(d).

Davis has stated a claim for relief under the Equal Pay Act. She has alleged that she has nearly identical job duties and responsibilities as at least one male coworker, Lopez, because the letter she received from the City stated that "the essential duties and responsibilities of [her] position" and Lopez's position "appear to be identical." (Am. Compl., Ex. B.) There is no requirement that Davis identify Lopez's job title because the relevant inquiry for the Equal Pay Act is whether the work—not the job title—is equal. *See* 29 U.S.C. § 206(d)(1). Further, based on Davis's allegations, she and Lopez are coworkers doing the same budgetary and financial management work for the City. It is reasonable to infer that two City employees performing budget and finance jobs work under similar working conditions. *See id.*; *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 202 (1974) (explaining that "working conditions" refers to surroundings, such as the elements or exposure to toxic substances, and physical hazards).

**D. In Count 5, Davis fails to state a claim for breach of contract because she has not identified any specific contractual obligation on the part of the City not to discriminate on the basis of sex in terms of compensation.**

In Count 5, Davis alleges that the City of Atlanta breached its employment contract with her by discriminating against her on the basis of sex and by failing

to follow its internal grievance procedures.  (Am. Compl. ¶¶ 66-72.)  She alleges that the City's ordinances and personnel SOPs constitute the terms of an employment contract.  (*Id.* ¶ 67.)  She asserts that the City's ordinances require equal pay for equal work and contain "promises not to engage in discriminatory practices based on Plaintiff's sex."  (*Id.* ¶¶ 27, 68.)  She further alleges that the City did not follow its own grievances procedures in addressing her complaints about her compensation.  (*Id.* ¶ 70.)  By engaging in sex discrimination, Davis alleges, the City breached its employment contract with her.  (*Id.* ¶ 71.)

The City argues that Davis fails to state a claim for breach of contract because the City's personnel SOPs cannot form the basis of an employment contract.  [Doc. 20 at 19.]  The City also notes that it has not identified any cases in which a Georgia court held that a municipality's anti-discrimination ordinances or policies constitute the terms of an employment contract.  [Doc. 29 at 13-15.]

The elements of a Georgia breach-of-contract claim are (1) the breach; (2) the resultant damages; (3) to the party who has the right to complain about the contract being broken.  *Norton v. Budget Rent A Car Sys., Inc.*, 307 Ga. App. 501, 502 (2010).  A party asserting the existence of a contract bears the burden of proving the contract's existence and its terms.  *Jackson v. Easters*, 190 Ga. App.

713, 714 (1989).  For a valid contract to exist, there must be, *inter alia*, a "clear expression of the terms of the agreement." *Id.*; *see also* O.C.G.A. § 13-3-1.

In some cases, municipal ordinances may form part of a municipality's employment contract with its employees.  *See e.g.*, *City of Atlanta v. Adams*, 256 Ga. 620, 620 (1987) (considering a contract claim based upon a City ordinance providing for employees' back wages); *Willis v. City of Atlanta*, 265 Ga. App. 640, 643-44 (2004) (considering a breach-of-contract claim by employee alleging that the City implemented a reduction in force without complying with its own ordinances); *Atkinson v. City of Roswell*, 203 Ga. App. 192, 193-94 (1992) (considering employees' claim that municipality breached their employment contracts by violating personnel rules adopted by municipal resolution); *see also City of Albany v. Mitchell*, 81 Ga. App. 408 (1950) (considering municipal employee's claim for back wages where municipality allegedly failed to follow proper procedure under municipal charter and ordinances for discharging employee).

To survive a motion to dismiss on a breach of contract claim, a plaintiff must identify the term or terms of the contract that she believes the defendant has breached. *Goodwill v. BB&T Ins. Servs, Inc.*, No. 1:13-cv-1119-WSD, 2013 WL

31

6271868, at *4 (N.D. Ga. Dec. 4, 2013); *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1369 (N.D. Ga. 2006) (citing *Adkins v. Cagle Foods, JV, LLC*, 411 F.3d 1320, 1327 (11th Cir. 2005)); *see also Muckle v. UNCF*, 930 F. Supp. 2d 1355, 1359 (N.D. Ga. 2012) (dismissing plaintiff's breach of contract claim for failure to state a claim because plaintiff did not show or allege the existence of a valid contract).  In *American Casual Dining*, the plaintiff, a restaurant franchisee, alleged a violation of an introductory portion of a franchising contract, which identified the defendant franchisor's efforts to develop a successful restaurant system.  426 F. Supp. 2d at 1368-69.  The District Court determined that such representations and introductory statements "do not obligate [defendant] to act in any specific way on behalf of [plaintiff]," and therefore could not be the basis of a breach of contract claim.  *Id.*

In Count 5, Davis has not identified any specific provision of the SOPs[5] or any specific ordinance articulating the City's anti-discrimination policy.  By

---

[5] Davis has not explained what the City's SOPs are, namely, whether they are provided by City ordinance or are more like an employee handbook.  In many cases, an employer's failure to follow procedures in a handbook is not actionable as a breach of contract.  *See Shah v. Clark Atlanta Univ., Inc.*, No. CIV.A.1:97-CV3786CAM, 1999 WL 1042979, at *20 (N.D. Ga. July 20, 1999) (collecting cases).  Here, the Court assumes without deciding that the City's SOPs could be terms of an employment contract.

32

failing to do so, Davis has failed to identify the terms of her alleged contract with the City. *See Goodwill*, 2013 WL 6271868, at *4. The City's policy or goal not to discriminate on the basis of sex and to provide equal pay for equal work does not, without more, create a contractual obligation on the part of the City to Davis as its employee. *See Am. Casual Dining, L.P.*, 426 F. Supp. 2d at 1368-69. In sum, Davis has not stated a claim for breach of contract because she has not identified an ordinance or SOP that prohibits sex discrimination with respect to compensation and obligates the City to act in a certain way with respect to Davis as its employee.[6]

## V.    Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that the District Court **DENY** the motion for leave to amend [Doc. 23] and **GRANT IN PART** and **DENY IN PART** the motion to dismiss [Doc. 20].

Specifically, the motion to dismiss should be **DENIED** with respect to the following claims, and they should be **ALLOWED TO PROCEED**:

(1) the Title VII compensation claim against the City in Count 1;

---

[6] Davis also refers to City ordinances requiring back pay for work performed "out of class," but she raises no claim with respect to any such ordinance. (*See* Am. Compl. ¶ 27.)

(2) the § 1983 equal protection claim against all Defendants in Count 2; and

(3) the Equal Pay Act claim against the City in Count 4.

The motion to dismiss should be **GRANTED** as to the following claims because they are unexhausted, and the claims should be **DISMISSED WITHOUT PREJUDICE**:

(1) the Title VII failure-to-promote and working conditions claims against the City in Count 1; and
(2) the Title VII disparate impact claim against the City in Count 1.

The motion to dismiss should be **GRANTED** as to the following claims because they fail as a matter of law, and the claims should be **DISMISSED WITH PREJUDICE**:

(1) all Title VII claims against Defendants Yancy and Mendoza in Count 1;

(2) the Title VII pattern-or-practice claim against the City in Count 1;

(3) the § 1983 due process claim against all Defendants in Count 3; and

(4) the breach-of-contract claim against the City in Count 5.

The motion to dismiss should be **DENIED AS MOOT** to the extent that it seeks the dismissal of § 1981 and LLFPA claims.

34

IT IS SO RECOMMENDED this 2nd day of March, 2017.

_____

JOHN K. LARKINS III
United States Magistrate Judge